# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sarah Aislinn Flynn Thomas,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>State Farm Insurance Company,<br><br>　　　　　　　　　　Defendant. | Case No. 18-cv-00728-BAS-BGS<br>**ORDER:**<br>**(1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 24];**<br>**AND**<br>**(2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 25]** |

Before the Court are the parties' cross-motions for summary judgment. In the underlying action, which was removed to this Court on April 13, 2018 from San Diego Superior Court, Plaintiff Sarah Aislinn Flynn Thomas alleged that Defendant State Farm General Insurance Company ("Defendant" or "State Farm") breached the terms of two life insurance policies issued to Plaintiff's brother, James Flynn, by unreasonably denying life insurance benefits to Plaintiff upon her brother's death. (Compl., Ex. 1 to Notice Of Removal, ECF No. 1-2.)[1]

In its Motion for Summary Judgment, Defendant states that, as a matter of law, it is entitled to judgment on Plaintiff's claims because both life insurance policies had lapsed

---

[1] On April 13, 2018, this case was removed on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), from the Superior Court for the County of San Diego to this Court. (*See* Notice Of Removal, ECF No. 1.)

due to non-payment of premiums before Mr. Flynn's death. (Def.'s Mot. for Summ. J., ECF No. 24.) Plaintiff contends in her summary judgment motion that Defendant's termination of the policies due to lapse violated two California Insurance Code statutes, §§ 10113.71 and 10113.72 (the "Statutes"), which went into effect five years after Defendant issued the two life insurance policies to Mr. Flynn. (Plf.'s Mot. for Summ. J., ECF No. 25.) The dispute on summary judgment is solely whether the Statutes govern the two policies at issue in this case.

For the reasons stated below, the Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's Motion for Summary Judgment.

I. BACKGROUND

A. Statement of Facts

The relevant facts are not in dispute. (*See generally*, Stipulated Material Facts ("SMF"), ECF No. 25-4.) On February 11, 2008, Defendant issued a life insurance policy insuring the life of James' Flynn in the amount of $500,000. (SMF No. 1, Ex. 1, Policy No. LF-2471-3363 ("Policy 3363") at 2.) On October 5, 2015, Mr. Flynn made Plaintiff, his sister, the primary beneficiary of the policy. (SMF No. 4, Policy 3363 at 15.) Defendant issued a second life insurance policy to Mr. Flynn in the same amount, effective March 23, 2008. (SMF No. 5, Ex. 2, Policy No. LF-2528-3142 ("Policy 3142") at 29.)[2] Mr. Flynn made Plaintiff the primary beneficiary of this policy on October 5, 2015 as well. (SMF No. 8, Policy 3142 at 41.) In 2011, Mr. Flynn authorized premium payments for both policies to be made by electronic funds transfers through a State Farm Payment Plan ("SFPP"). (SMF No. 9.)

SFPP collected the last premium payments for both policies on February 16, 2016. (SMF Nos. 10, 12.) Coverage on Policy 3363 continued until March 11, 2016 and coverage for Policy 3142 continued until March 23, 2016. (SMF Nos. 11, 13.) In March 2016, SFPP's attempt to collect further premium payments for both policies failed. (SMF

---

[2] The Court refers to Policy 3363 and Policy 3142 collectively as "the Policies."

No. 14.) On March 17, 2016, SFPP mailed a notice to Mr. Flynn notifying him of the balance due on his policies and explaining that coverage under both policies would end after a grace period if no further payments were made. (SMF Nos. 15–16, Ex. 3, March 17, 2016 Notice.) The Policies define the "Grace Period" as 31 days "allowed from the payment of a premium after its due date" during which "policy benefits continue." (Policy 3363 at 11; Policy 3142 at 37.)

As of April 16, 2016, SFPP received no further payments from Mr. Flynn. (SMF No. 17.) State Farm then mailed a notice to Mr. Flynn indicating that Policy 3363 had lapsed, and that Mr. Flynn could make a late payment of $200.16 by May 2, 2016 to have his coverage reinstated. (SMF No. 18–19, Ex. 4, Notice of Policy 3363 Lapse.) Similarly, SFPP notified Mr. Flynn that Policy 3142 had lapsed after receiving no further premium payments as of April 28, 2016, and offered Mr. Flynn an opportunity to reinstate this Policy by paying $1,150.00 by May 14, 2016. (SMF No. 20–22, Ex. 5, Notice of Policy 3142 Lapse.) SFPP received no payments to reinstate either policy by their respective deadlines. (SMF Nos. 23–24.)

The parties stipulate that there is "no known evidence" that State Farm "communicated with Mr. Flynn about designating a third party to receive notice of lapse or termination of Policy 3363 or Policy 3142 for nonpayment of premium or that [State Farm] gave Mr. Flynn a form to make such a designation." (SMF No. 28.)

Mr. Flynn passed away on January 24, 2017. (SMF No. 32, Ex. 8, Letter from Maher Law Firm.) On January 31, 2017, the attorney for Mr. Flynn's estate inquired about the status of the life insurance policies in his name. (SMF No. 29, Ex. 6, Letter from John L. Thomas.) State Farm informed the attorney about two weeks later that no active life insurance policies in Mr. Flynn's name existed in State Farm's records. (SMF No. 30, Ex. 7, February 17, 2017 Letter from State Farm Life Claims ("SFLC").) Plaintiff's attorneys then requested copies of Policies 3142 and 3363 and "any and all documentation as to the reason why the policy limits were not paid out to the intended beneficiary." (SMF. No 31–32, Ex. 8, June 6, 2017 Letter from Jason R. Fraxedas.) State Farm obliged and mailed

copies of the policies on July 5, 2017. (SMF Nos. 33–34, Ex. 9, July 5, 2017 SFLC Letter.) In response, the firm sent another letter to SFLC requesting documents that reflected all monthly premium payments made by Mr. Flynn, the dates of his last premium payments, dividend payments and accumulations, and information and correspondence about Mr. Flynn's nonpayment and lapse. (SMF No. 34–35, Ex. 10, August 21, 2017 Letter from Jason R. Fraxedas.) State Farm sent the responsive documents to the firm on September 12, 2017. (SMF No. 37–38, Ex. 11, Letter from Traci McKenzie.)

**B. Legal Landscape**

The resolution of this dispute depends wholly on whether the Statutes, effective January 1, 2013, are applicable to Mr. Flynn's Policies, issued in 2008. Below, the Court summarizes the applicable law, including a recent state appellate decision, to preface its analysis of the legal question presented in this case.

1. <u>Cal. Ins. Code §§ 10113.71 and 10113.72</u>

Both § 10113.71 and § 10113.72 impose additional requirements on insurers regarding nonpayment of premiums and lapse and termination notifications for life insurance policies. The first of these Statutes creates two new requirements: (1) that all life insurance policies in California to include a provision for minimum 60-day grace period from the premium due date to allow for late premium payments; and (2) that notices of nonpayment of premium, lapse of policy, and termination of policy, must be sent to the policy owner, a designee named pursuant to § 10113.72 for an individual policy, and "a known assignee or other person having an interest" in the policy, within a 30-day period. Cal. Ins. Code § 10113.71(a), (b)(1), and (b)(3).[3]

---

[3] The relevant text of the § 10113.71 states the following:

> (a) Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.
>
> (b)(1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee

- 4 -

18cv728

The second statute requires insurers to: (1) give policyholders the right to designate a third person to receive notice of a lapse or termination of a policy for nonpayment of a premium by providing policyholders with a designation form; and (2) notify policyholders annually of their right to change the designation or designate multiple people. Cal Ins. Code § 10113.72(a), (b). This statute also prohibits policies from lapsing or terminating for nonpayment of a premium unless the insurer provides notice 30 days before lapse or termination to policyholders and their designees by first-class mail. *Id.* § 10113.72(c).[4]

It is undisputed that Defendant did not provide Mr. Flynn a 60-day grace period to pay his premium after the premium due date on either policy and did not give Mr. Flynn an opportunity to designate a third party to receive notice of nonpayment, lapse, or termination. (*See* SMF Nos. 18–21, 28.) Thus, the only issue to be decided on summary judgment is whether the above statutes, effective 2013, govern Mr. Flynn's two life insurance policies issued in 2008 and terminated in 2016.

---

or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

. . .

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

[4] The relevant text of § 10113.72 provides the following:

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

- 5 -

## 2. *McHugh v. Protective Life Insurance*

On October 14, 2019, Defendant filed a Notice of Supplemental Authority enclosing an opinion by California's Fourth District Court of Appeal, *McHugh v. Protective Life Insurance*, 40 Cal. App. 5th 1166 (Ct. App. 2019), squarely addressing the retroactive application of the aforementioned statutes. (ECF No. 34.) The Court takes judicial notice of this decision under Federal Rule of Evidence 201. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal quotations omitted).

In *McHugh*, a life insurance policy issued in 2005 lapsed on February 9, 2013 after the insured failed to pay his premium on January 9, 2013. *Id.* at 1169. The designated beneficiary of a life insurance policy claimed that the insurance company breached its contract by providing only a 31-day grace period before termination instead of 60 days as required by §§ 10113.71 and 10113.72. *Id.* at 1169–70.

The California Court of Appeals concluded that §§ 10113.71 and 10113.72 apply to only those life insurance policies issued before the statutes' January 1, 2013 effective date. The court deferred to the interpretation of the Department of Insurance after finding that its reading of the statutes was "reasonable and consistent with the language of the statutes." *Id.* at 1173. In so holding, the court found that the plain meaning of the terms "applicant," "designee," and "issued and delivered" indicate that the statutory requirements under §§ 10113.71 and 10113.72 were intended to apply only prospectively to policies issued after January 1, 2013. *Id.* at 1174–76. As such, the court held that the 60-day statutory requirement did not retroactively apply to the policy in question, which was issued in 2005. *Id.* at 1177.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Generally, a party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party meets this initial burden, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

However, summary judgment is also appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Questions of statutory interpretation, for example, can be properly decided on summary judgment. *See California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 317 F. Supp. 2d 1188, 1191 (C.D. Cal. 2004) ("When there are no facts in dispute and the only issue raised is a question of statutory interpretation, . . . it is appropriate to decide the issue by summary judgment.") (citing *Edwards v. Aguillard*, 482 U.S. 578, 595 (1987)).

## III. DISCUSSION

The parties appear to agree that their summary judgment motions present solely a question of law, specifically whether the statutory requirements of §§ 10113.71 and 10113.72 apply to Mr. Flynn's two life insurance policies.

Plaintiff argues that the language of the statutes indicates that they apply to insurance policies issued before January 1, 2013 that remain in force after that date, and, alternatively, under the renewal principle, the Statutes' requirements were incorporated into the policies upon payment of premiums, which effectively renewed the policies. (Pl.'s Mot. for Summ. J. at 7–8.) In opposition, Defendant argues that the plain language of the Statutes does not overcome the presumption against retroactivity and that Plaintiff has failed to show that the two Policies, as term life insurance policies, renewed merely due to the payment of premiums such that the renewal principle applies. (Def.'s Mot. for Summ. J. at 6–7; Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def's Opp'n") at 8–9, ECF No. 28.)

As explained below, the Court finds that the Statutes have no retroactive effect on policies issued before their effective date. However, because Mr. Flynn's Policies renewed after the effective date, the Policies incorporated the Statutes' requirements pursuant to the renewal principle.

### A. Retroactivity

Plaintiff argues that the statutory language of §§ 10113.71 and 10113.72 indicates retroactive application to policies issued and delivered before the Effective Date. (Pl.'s Mot. for Summ. J. at 9–13.) In light of *McHugh*, the Court must consider the impact of the California Court of Appeals decision, if any, on Plaintiff's claims.

Generally, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state[,]" whether that law originates in a statute passed by a state legislature or in a decision by a state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Where an intermediate appellate state court has decided an issue of state law, that decision "is not to be disregarded by a federal court unless it is convinced ... that the highest court of the state would decide otherwise[.]" *Tenneco W., Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir. 1985) (internal quotations omitted). Thus, the Court must consider whether the California Supreme Court would affirm or reverse the decision in *McHugh* finding the Statutes applicable only to policies issued after January 1, 2013. See *Lewis v. Tel. Employees Credit Union*, 87 F.3d

- 8 -

18cv728

1537, 1545 (9th Cir. 1996) (federal courts must consider "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements" to determine how the highest state court would decide an issue) (internal quotations omitted)

In the context of insurance law, the California Supreme Court has previously rejected the generous retroactive application of new statutory law to old insurance policies. *Interinsurance Exch. of Auto. Club of S. Cal. v. Ohio Cas. Ins. Co.*, 58 Cal. 2d 142, 149 (1962) ("It is well[-]settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued. Such provisions are read into each policy thereunder, and become a part of the contract with full binding effect upon each party.") (internal citations and quotations omitted). The California Supreme Court based its conclusion on the "presumption against retroactivity," which it has generally followed in all cases addressing retroactive legislation. *See McClung v. Employment Dev. Dep't*, 34 Cal. 4th 467, 475 (2004) (finding that "the presumption against retroactive legislation is deeply rooted in our jurisprudence."). This approach treats retroactivity as a policy determination to be made by the state legislature. *Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th 828, 841 (2002). However, "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." *Id.* (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001)); *see also* Retroactive effect of statute prescribing terms or rights under life insurance policies, annotated at 106 A.L.R. 46. This presumption can only be overcome if "the Legislature plainly has directed otherwise by means of express language of retroactivity or . . . other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application." *Quarry v. Doe I*, 53 Cal. 4th 945, 955 (2012).

Other jurisdictions have also followed this rule and specifically concluded that insurance provisions did not have retroactive effect on policies issued before the effective date. *See State ex rel. Crawford v. Guardian Life Ins. Co. of Am.*, 1997 OK 10, 954 P.2d 1235, 1237–38 (1998) (holding that amended statute preventing reinsurer of contractual right of offset could not be applied retroactively); *Nat'l Can Corp. v. Indus. Comm'n*, 148

Ill. App. 3d. 1079, 1082 (1986) (holding that a workers' compensation statute should not be retroactively applied to insurance policies "obtained" prior to the effective date of the statute); *Lee v. Universal Life Ins. Co.*, 420 S.W.2d 222, 226 (Tex. Civ. App. 1967) ("In the construction of an insurance policy it is the law in effect at the date of its issuance that is controlling."); *Skinner v. Holt*, 9 S.D. 427, 69 N.W. 595, 598 (1896) (holding that there was no clear legislative intent to retroactively apply an act exempting life insurance policies from liability for debt).

Consistent with both California Supreme Court precedent and the conclusions of other jurisdictions, the court in *McHugh* found no express retroactivity provision in the Statutes and looked to legislative intent to determine the retroactivity of the Statutes. The court looked at the relevant sections of Assembly Bill No. 1747, other judicial decisions interpreting the same contractual language, and the text of the statutory provisions themselves. *McHugh*, 40 Cal. App. 5th at 1174–76. Finding no "clear and unavoidable implication" that the California legislature intended the Statutes to apply retroactively to policies issued before the effective date,[5] the court deferred to the interpretation proffered by the Department of Insurance and affirmed the trial court's special verdict in favor of the insurer. *Id.*; *see also Shaff v. Farmers New World Life Ins. Co.*, No. LA CV 17-03610 JAK (Ex), 2019 WL 4570014, at *10–11 (C.D. Cal. Aug. 5, 2019), *appeal docketed*, No. 19-56129 (9th Cir. Sept. 25, 2019).

Thus, the Court finds no basis to conclude that California Supreme Court would decide otherwise regarding the Statutes' retroactive effect. Accordingly, the Court finds that, as a question of law, the statutory requirements of §§ 10113.71 and 10113.72 have no retroactive effect under *McHugh*.

---

[5] Plaintiff also argues, in the alternative, that "[a]pplying the Statutes' grace-period and designation requirements to pre-2013 policies in force after 2013 *does not require retroactive application of the Statutes*" because it would not "undo any action taken before 2013. . . ." (Pl.'s Mot. for Summ. J. at 15.) The *McHugh* decision, however, specifically found that "the statutes apply only to policies *issued or delivered* after January 1, 2013 . . . ." 40 Cal. App. 5th at 1171 (emphasis added). Thus, the fact that designation, lapse, and termination occurred after the effective date is not relevant to an analysis of retroactive application; only the date a policy was issued or delivered is dispositive.

### B. Renewal

In the alternative, Plaintiff argues that because the Policies were effectively renewed each time the premium payment was made, the "renewal principle" applies wherein a renewed policy incorporates all changes in the law that occurred prior to renewal. (Pl.'s Mot. for Summ. J. at 21.) Defendant, however, argues that because the Policies were for term life insurance, the payment of a monthly premium did not "renew" the Policies but instead kept the Policies in force throughout their stated term. (Def.'s Opp'n at 10–11.)

The renewal principle applies the *Interninsurance* rule, stated in Section III.A, *supra*, to "not only new policies but also renewals: Each renewal incorporates any changes in the law that occurred prior to the renewal." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 927 (9th Cir. 2012) (citing *Modglin v. State Farm Mut. Auto. Ins. Co.*, 273 Cal. App. 2d 693, 700 (1969) and Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance* § 29:43 (3d ed. 2010)). The renewal principle applies in different insurance contexts, including to life insurance policies. *See Cerone v. Reliance Standard Life Ins. Co.*, 9 F. Supp. 3d 1145, 1151–1152 (S.D. Cal. 2014); *see also Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723, 736 (C.D. Cal. 2019). Further, the Central District of California has held that a monthly premium payment constitutes a policy renewal. 371 F. Supp. at 735–36 (citing *Argonaut Ins., Co. v. Colonial Ins. Co.*, 70 Cal. App. 3d 608, 619–20 (1977)).

Here, Mr. Flynn paid his premiums from the date of inception of the Policies in 2008 until 2016. (SMF Nos. 9–14.) Nothing in the record indicates that Mr. Flynn failed to pay his monthly premiums at any other time during this eight-year period, including in 2013 when the Statutes were enacted. Thus, if the premium payment constituted a renewal, Mr. Flynn's payments after January 1, 2013 renewed his Policies after the effective dates of the Statutes and incorporated, pursuant to the renewal principle, the Statutes' requirements enacted prior to its renewal. Thus, the Court must decide if Mr. Flynn's payment of

monthly premiums constitutes renewal such that the renewal principle applies.[6]

The *Bentley* court determined that the Class Policy at issue renewed through monthly premium payments based on a set of facts substantially similar to those present here. The court there found that that a Class Policy that included subannual premium payments, a provision for termination due to non-payment, and an option to reinstate the policy pursuant to certain conditions, was "renewed when a premium payment was made after the Effective Date, regardless of whether the payment was an annual or subannual premium payment." *Bentley*, 371 F. Supp. 3d at 735–36. Similarly, in this case, Mr. Flynn paid for his life insurance policy subannually. (Policy 3363 at 11 ("Payment of Premiums").) The Policies lapsed and ultimately terminated on the premium due date if the premium was not paid within the allotted Grace Period. (*Id.* at 13 ("Termination").) The Policy allowed for reinstatement of its terms, in the event of lapse, if all past due premiums were repaid with interest. (Id. at 11 ("Reinstatement").)

However, Defendant argues that the California state court decisions on which *Bentley* relies for its holding—specifically, *Modglin v. State Farm* and *Argonaut v. Colonial*—are distinguishable from the instant case. First, Defendant argues that *Modglin* is distinguishable because the policy in that case was expressly "coming up for renewal"

---

[6] The court in *McHugh* does not directly address whether a monthly payment of a premium constitutes renewal of an insurance policy. Instead, it affirmed the Department of Insurance's interpretation of the Statutes as having no retroactive effect. However, the Department of Insurance also came to the conclusion that the Statutes' requirements did not attach to *renewed* policies. 40 Cal. App. 5th at 1172 (excerpting a letter from the Department of Insurance's chief counsel concluding that the Statutes do not require insurers "to extend the grace period for policies that are already in force and . . . when policies that were issued prior to [January 1, 2013], are renewed."). Nonetheless, renewal was not relevant to the court's decision because the policy at issue in *McHugh* did not renew after the effective date of the statutes. *See Bentley*, 371 F. Supp. 3d at 737 (finding that renewal principle applied only to policies where a premium payment was made after the Statutes' effective date and not to policies where no premium payment was made in 2013). In *McHugh*, the policy lapsed because the insured "failed to pay the premium due on January 9, 2013." 40 Cal. App. 5th at 1170. Although it is unclear from the decision how frequently the insured made his premium payments, a premium due on January 9, 2013 would have been last paid in 2012, before the January 1, 2013 effective date for §§ 10113.71 and 10113.72. Thus, even if the premium payment constituted a renewal, the insured's policy in *McHugh* would have been last renewed before, not after, the effective dates of the Statutes. Therefore, the renewal principle did not apply to incorporate the changes imposed by the Statutes in that case and, as such, *McHugh* did not make any findings specific to issue of renewal that the Court must address here.

- 12 -

after the 12-month term of the policy expired.  (Def.'s Reply Mem. in support of Mot. for Summ. J. ("Def.'s Reply") at 2, ECF No. 30.)  Here, Defendant argues, there was no express renewal notice as the term of the Policies would not expire until Mr. Flynn's 95th birthday; consequently, Defendant did not send Mr. Flynn a "renewal premium notice." (*Id.*)  Defendant contends that Mr. Flynn's monthly premium payments were distinct from such renewal premiums because they "did nothing to secure coverage beyond the original term" and "merely perpetuated coverage under the subject policies further into the original term for which they had been issued."  (*Id.*)

The Court does not find this persuasive.  First, Defendant's claim that the policy in *Modglin* was issued "for a specific, 12 month term" is factually inaccurate.  (Def.'s Mot. for Summ. J. at 6.)  The court in *Modglin* states that the policies were issued on May 26, 1965 with coverage until July 24, 1965, a 60-day period.  273 Cal. App. 2d at 695.  When the end of the coverage period was near, State Farm informed the insureds that their policy "was coming up for renewal," and the insureds "renewed" the policy by mailing a "premium notice and a check for the insurance premiums" to the insurance company's office.  *Id.* at 696.  Second, the use of the word "renewal" is not dispositive.  California courts have found in other insurance contexts that "premium notices" informing insured individuals that coverage would continue if a premium was paid by a certain due date constituted a renewal notice, even though it did not contain the words "offer," "renewal," or "renew."  *Fujimoto v. W. Pioneer Ins. Co.*, 86 Cal. App. 3d 305, 311 (Ct. App. 1978) (holding that a "natural construction" of a Premium Notice contained an offer to renew a policy and that its lack of the terms "offer," "renewal," and "renew" was "not significant").  The Court sees no reason to deviate from this principle in the life insurance context.  The effect of a notice of nonpayment of premium and a notice of nonrenewal is the same: coverage continues if the insured pays a premium—whether characterized as a "renewal premium" or simply a "premium"—but coverage lapses and ultimately terminates if no payment is made.  Thus, the use of different terms is inapposite.

Further, Defendant's attempt to distinguish the Policies because they simply "perpetuated coverage" during their established terms is unsupported by the case law. The policy in *Bentley* was an annual term policy that renewed upon the payment of a monthly premium, and the policy in *Argonaut* was indefinite policy with a monthly premium. *See Bentley*, 371 F. Supp. 33 at 736 ("A Class Policy owner can pay for his or her annual life insurance policy in other intervals besides annually, such as in monthly payments.") (emphasis added); *Argonaut*, 70 Cal. App. 3d at 618–19. Monthly payments on these policies did not secure coverage beyond a one-year term; rather, the payments were maintaining continuous coverage. *See Argonaut*, 70 Cal. App. 3d at 618–19 (". . . Colonial concedes that the premium period for the Colonial policy was monthly, and that if the monthly premium payment was not received on or before a specified date the policy was routinely cancelled to be reinstated when the premium was actually received."); *see also Bentley*, 371 F. Supp. 3d at 736 (defining "renewal" as "a subannual policy payment that renews a policy for the period of time that the payment covers").

The Policies here provided Mr. Flynn with the option of paying an annual premium; Mr. Flynn nonetheless chose to pay in monthly installments. (Policy 3363 at 4–5; Policy 3142 at 31–32.) Similar to the facts in *Argonaut*, when Mr. Flynn failed to pay a monthly premium, his policy lapsed and was subsequently terminated. The monthly premiums, therefore, functioned in the main as renewal payments by keeping the Policies active "for a period of time that the payment covered." *See Bentley*, 371 F. Supp. 3d at 736. This is supported by Defendant's representations in its letters to Mr. Flynn stating that the last premium payments received on February 16, 2016 extended coverage on Policy 3363 and Policy 3142 only for a limited period of time—until March 11, 2016 and March 23, 2016, respectively. (*See* SMF Nos. 10, 12, 14.)

Defendant argues that *Argonaut* is distinguishable because the California Court of Appeals found in that case that the insurance policy in question had been renewed "in light of the monthly premium periods and the notices of cancellation and reinstatement." 70 Cal. App. 3d at 620. Here, while Mr. Flynn made monthly policy payments and his

Policies were subsequently cancelled due to nonpayment, his Policies were not reinstated during his lifetime. But the court in *Bentley* found more broadly that a life insurance policy incorporated the Statutes' requirements through the renewal principle "once the policy renewed through a monthly premium payment that occurred after the statute's effective date" and where the policy contained cancellation and reinstatement provisions, even if they had not been invoked. 371 F. Supp. 3d at 735–36 (". . . the policy *can be* reinstated if the policyholder fulfills certain conditions, including paying all past due premiums") (emphasis added).

The Court sees no reason—and Defendant proffers none— to require cancellation and subsequent reinstatement of a policy to find that the policy has been renewed. As stated above, "renewing" a policy and paying a premium lead to the same result: continuing coverage for a period covered by a premium. Moreover, equating payment of a premium with renewal is consistent with the understanding of these concepts in other insurance contexts. *See Modglin*, 273 Cal. App. 2d at 696 (insureds' mailing of a premium notice and premium payment in response to "renewal billing notice" renewed the insureds' auto insurance policy).

Therefore, the Court finds that the Policies renewed upon payment of monthly premiums. Because Mr. Flynn made such payments after the Statutes' January 1, 2013 effective date, the Policies incorporated the new grace period, designation, and notification requirements Statutes under the renewal principle and Defendant was required to comply with such requirements before terminating the Policies.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment. Defendant's Motion for Summary Judgment is therefore **DENIED**. By **December 24, 2019**, the parties shall jointly file a status report indicating the status of all claims in this action in light of this Order and whether entry of judgment is appropriate.

**IT IS SO ORDERED.**

**DATED: December 10, 2019**

Hon. Cynthia Bashant
United States District Judge